UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:04-CR-45-02-F

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| LOUIS A. GUARASCIO, | ) | |
| Defendant. | ) | |

This matter is before the court on defendant Louis Andrew Guarascio's ("Guarascio") petition for writ of *audita querela* and motion to dismiss [DE-180]. Therein, he seeks an order dismissing the Indictment pursuant to which he was convicted. He also alleges that the court lacked subject matter jurisdiction and that the Indictment failed to charge an offense, or alternatively, he seeks to arrest judgment. The court has carefully considered Guarascio's motion, together with the record in this case, and concludes that his claims are meritless.

The court directs attention to the record for a complete background of this case. In a nutshell, Guarascio is serving a 690-month sentence on his conviction by a jury of three counts of armed bank robbery and aiding and abetting, and three counts of using, carrying and possessing a firearm during a crime of violence, and aiding and abetting. His direct appeal was dismissed pursuant to Rule 42(b), FED. R. APP. P., and he did not seek a writ of *certiorari* in the Supreme Court. His motion for relief pursuant to 28 U.S.C. § 2255 was denied by order of July 29, 2009 [DE-162], and this court denied his motion for reconsideration, *see* [DE-168], which order was affirmed on appeal, *see* [DE-175], in November 2010.

Guarascio pursued a motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. That motion was denied, however, as a result of the court's allowing the Government's

Motion to Dismiss, or Alternatively, for Summary Judgment [DE-153]. *See* Order of July 28, 2009 [DE-162]. The court denied Guarascio's motion for reconsideration [DE-164] and for a certificate of appealability [DE-165]. *See* Order [DE-168]. The Fourth Circuit Court of Appeals dismissed his appeal and also denied a certificate of appealability. *See* August 27, 2010, Opinion [DE-172]. Guarascio filed the instant motion on May 11, 2012. *See* Motion [DE-180].

### A. *Availability of Audita Querela*

Guarascio already has had one § 2255 motion [DE-140/ -141] adjudicated. "The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires that before a second or successive motion or petition is filed, the petitioner must first obtain an order from the court of appeals authorizing the district court to consider it." *United States v. Holt*, 417 F.3d 1172, 1175 (11th Cir. 2005). A prisoner may not avoid AEDPA's requirements for filing a second or successive § 2255 motion by filing a petition for a writ of *audita querela*.[1] *See Torres*, 282 F.3d at 1245. That is, the " 'statutory limits on second or successive habeas petitions do not create a 'gap' in the post-conviction landscape that can be filled with common law writs.' " *Alonzo v. United States*, 368 Fed. App'x 467 (4th Cir. 2010) (quoting *Torres*, 282 F.3d at 1245); *In re Rushing-Floyd*, 62 Fed. App'x 64, 64-65 (4th Cir. 2003); *see also United States v. Hughes*, No.

---

[1] "Writs of *audita querela* and *coram nobis* 'are similar, but not identical.' *United States v. Reyes*, 945 F.2d 862, 863 n.1 (5th Cir. 1991). Usually, a writ of *coram nobis* is used 'to attack a judgment that was infirm [at the time it issued], for reasons that later came to light.' *Id*. By contrast, a writ of *audita querela* is used to challenge 'a judgment that was correct at the time rendered but which is rendered infirm by matters which arise after its rendition.' *Id*." *United States v. Torres*, 282 F.3d 1241, 1245 (10th Cir. 2002). Although Rule 60(b), FED. R. CIV. PRO., formally abolished both writs, *see id.*, the Supreme Court held that the writ of *coram nobis* still might be pursued in a criminal context under the All Writs Act. *See United States v. Morgan*, 346 U.S. 502 (1954); *United States v. Hernandez-Monreal*, 404 Fed. App'x 714, 715 (4th Cir. 2010).

1:05CR273, 2010 WL 2231786 (W.D.N.C. June 1, 2010), *appeal dismissed, leave to appeal denied,* 412 Fed. App'x 627 (4th Cir. 2011).

Several courts of appeals occasionally have assumed for the sake of argument that the All Writs Act might permit a prisoner to seek relief in the form of a writ *audita querela*. *See Torres*, 282 F.3d at 1245 n.6 (citing *United States v. Reyes*, 945 F.2d 862, 863 n.1 (5th Cir. 1991)). Even if a petition for a writ *audita querela* were an available vehicle, however, Guarascio nevertheless is not entitled to substantive relief.

B. ***Substantive Analysis***

Guarascio raises two grounds on which he contends he is entitled to relief on collateral review. First, he contends that the Government failed to carry its burden of proof at his trial to demonstrate "the substantive and jurisdictional elements" of the armed bank robbery charges. Specifically, Guarascio cites portions of 18 U.S.C. § 2113, the statute under which he was charged and convicted.

(i) <u>Conjunctive Charge/Disjunctive Verdict</u>

First, Guarascio contends that the Government failed to demonstrate each of three "elements" necessary to prove that the objects of the robbery were "banks." Under § 2113(f), he argues, the Government must prove that each business robbed was (i) FDIC-insured, *and* (ii) a member bank of the Federal Reserve System, *and* (iii) operating under the laws of the United States. He points out that the statute defines a "bank" in the conjunctive:

> As used in this section the term "bank" means any member bank of the Federal Reserve System, *and* any bank, banking association, trust company, savings bank, or other banking institution organized or operating under the laws of the United States, including a branch of agency of a foreign bank . . . , *and* any institution the deposits of which are insured by the Federal Deposit Insurance Corporation.

3

18 U.S.C. § 2113(f) (emphasis added). As to each of the counts charging armed bank robbery, however, the Indictment alleged only that the defendants robbed a named bank, "the deposits of which were then insured by the Federal Deposit Insurance Corporation."

The court acknowledges the gravamen of Guarascio's reasoning, but it is flawed. The definition of "bank" is drafted broadly to include institutions that fall into any of the categories contained in the definition, although the Government need only prove that the victim institution falls into just one of those categories. The purpose of charging an offense in the conjunctive ("*and*") is to afford the defendant with as much notice as possible under the terms of the statute. Therefore, statutory definitions often are stated in the most inclusive manner possible[2] to cover all of Congress's intended applications, and the definition of a "bank" in 18 U.S.C. § 2113(f) is a perfect example.

The definition of a "bank" for purposes of § 2113, includes a number of types of institutions which are listed in subsection (f). The definitions of "banks" in subsection (f) and "credit unions" in subsection (g) describe the types of financial institutions with the requisite federal nexus to be punishable under federal criminal law. In this example, the definitions are not composed of elements; they are inclusive descriptions of the ways in which a financial institution may qualify as a "bank" under § 2113.

Another example is 18 U.S.C. § 2151, a definitional statute within Chapter 105 of Title 18, United States Code, criminalizing "Sabotage." It provides that:

> [t]he words "war material" include arms, armament, ammunition, livestock, forage, forest products and standing timber, stores of clothing, air, water, food foodstuffs, fuel, supplies, munitions, and all articles, parts or ingredients intended for, adapted to, or suitable for the use of the United States of any association, in connection with the conduct of war or defense activities.

---

[2] Of course, the law may not be overbroad or vague in its wording.

4

Section 2151 contains seven paragraphs of definitions, most of which are similarly constructed. A prosecutor is not required to allege or prove more than one type of "war material" to convict a person of § 2154 which prohibits "Production of war material, war premises, or war utilities." Ammunition *or* water *or* livestock may satisfy the definition of "war material."

Offenses that, by statute, may be violated in more than one way (*e.g.*, it is unlawful "(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance", 21 U.S.C. § 841(a)), often are alleged in the charging instrument – a complaint, indictment or information – in the *conjunctive* so as to notice the defendant of all the potential permissible bases for liability. Hence, an *indictment* pursuant to § 841(a)(1) might charge a defendant with "knowingly and intentionally manufacturing, distributing, and dispensing, and possessing with the intent to manufacture, distribute and dispense a controlled substance, *to wit*, a quantity of cocaine base." However, the jury would be instructed in the *disjunctive*: "manufacturing, distributing or dispensing, or possessing with intent to manufacture, distribute or dispense a controlled substance, *to wit*, a quantity of cocaine base." *See, e.g., United States v. Bright*, No. 96-6886 (4th Cir. Nov. 17, 1997) ("[F]ederal pleading requires that an indictment charge in the conjunctive to inform the accused fully of the charges, and it is appropriate for the court to instruct the jury in the disjunctive") (citing *United States v. Klein*, 850 F.2d 404, 406 (8th Cir. 1988)).

Here, the Indictment charges that each of the three banks was insured by the Federal Deposit Insurance Corporation, one of the listed criteria that can satisfy the federal nexus element that the Government must prove beyond a reasonable doubt. Assuming the evidence would support it, the Government just as easily could have alleged and proved that each of the

5

three banks was a member of the Federal Reserve System. The jury was instructed according to the allegations contained in the Indictment and proved by the evidence beyond a reasonable doubt, and thus returned guilty verdicts on each count. Guarascio is entitled to no relief on this theory.

(ii) <u>Duplicity</u>

Secondly, Guarascio contends that the Indictment was defective in its purported statement of three, 18 U.S.C. § 924(c)[3] offenses, each of which corresponds to one of the alleged bank robberies. That is, he contends that the § 924(c) allegations conflated two separate and distinct offenses to form one single allegation, citing *United States v. Pleasant*, 125 F. Supp. 2d 173 (E.D. Va. 2000). Guarascio correctly points out that § 924(c) criminalizes two separate crimes: using and carrying a firearm during and in relation to any crime of violence or drug trafficking crime; and possessing a firearm in furtherance of any such crime. He relies on *United States v. King*, 628 F.3d 693 (4th Cir. 2010), in which the panel observed in a footnote,

> In the course of rejecting a challenge to jury instructions, we remarked in an unpublished opinion that § 924(c) "creates distinct 'use and carry' and 'possession' offenses" and so if a defendant is "indicted for one § 924(c) offense but convicted of the other, this would of course mandate reversal under our precedent." *United States v. Woods*, 271 Fed. Appx. 338, 343 (4th Cir. 2008).

Duplicity in criminal charges can pose the risk of less than a unanimous verdict as to separate offenses charged in a single count. *See, e.g., United States v. Armstrong*, 974 F. Supp. 528, 539 (E.D. Va. 1997). Of course, a count is not duplicitous merely because it alleges alternative means of completing a *single* offense. *See Pleasant*, 125 F. Supp. 2d at 176.

---

[3] Section 924(c) provides in pertinent part that, "any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced" to a term of imprisonment.

6

Here, however, there was not a risk of jury confusion or non-unanimity in the verdict, because the jury was instructed only on the "use and carry" offense, and the instructions contained detailed definitions of those terms as interpreted by the United States Supreme Court in *Bailey v. United States*, 56 U.S. 137 (1995). The jury was not instructed on the "possess in furtherance" offense contained in the second clause of § 924(c). As it is presumed that juries follow the instructions of the trial court, *see, e.g., United States v. Jones*, 527 U.S. 373, 394 (1999); *United States v. Johnson*, 587 F.3d 625, 631 (4th Cir. 2009), the jury determined as to each of Counts Two, Four and Six that Guarascio "used or carried" a firearm during or in relation to a crime of violence.

Importantly, Guarascio and his two co-defendants were charged in each count both with substantively committing the alleged offenses *and* with "aiding and abetting" each other in doing so. The jury also was carefully charged on application of that alternative ground of culpability, in the *disjunctive*. Therefore, even if the evidence did not show that Guarascio entered the banks personally, or that he physically used or carried a firearm, the Government's proof tended to show, and the jury found, that he knowingly aided or abetted another person(s) in doing so.

Therefore, the record on its face reveals that Guarascio's Indictment correctly charged alternative theories in the gun counts, as well as each essential element of the bank robbery counts. Counts One and Two charged that Guarascio and his two co-defendants, on or about February 10, 2003, each committed armed bank robbery (Count One), and "used and carried a firearm during and in relation to a crime of violence, that is armed bank robbery, and possessed

7

a firearm in furtherance of said crime (Count Two).[4] The jury was charged as to *each* of the gun charges (Counts Two, Four and Six) individually that:

> In order to sustain its burden of proof for the offense charged in Count [Two/Four/Six], the Government must prove the following two elements beyond a reasonable doubt:
>
> > First, that the defendant committed the crime of armed bank robbery as alleged in Count [One/Three/Five] of the Indictment; and
> >
> > Second, that the defendant knowing used *or* carried a firearm during *or* in relation to that crime, *or* that the defendant aided and abetted another in so doing.

Even if Guarascio had moved *prior* to his trial to dismiss the Indictment on either of the grounds discussed above, he would not have prevailed because his theories simply are not supported by the law.

(iii) Rule 12(b)

Guarascio's alternative ground for relief – Rule 12(b)(2), FED. R. CRIM. P. – is unavailable. It provides that "[a] party may raise by pretrial motion any defense objection, or request that the court can determine without a trial of the general issue." Of course, the instant petition in no way can be construed as a "pretrial motion."

Moreover, his complaints concerning the sufficiency of his Indictment to invoke the court's jurisdiction no longer are viable. *See, e.g.*, Rule 12(b)(3)(B), FED. R. CRIM. P. (providing that motions that must be raised before trial include "a motion alleging a defect in the indictment or information – but at any time *while the case is still pending* the court may hear a

---

[4] Counts Three and Four charged armed bank robbery/ aiding and abetting, and § 924(c), respectively, that occurred on February 19, 2003. Counts Five and Six charged armed bank robbery/aiding and abetting, and § 924(c), respectively, that occurred on April 2, 2003.

8

claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense"). Guarascio's case is not still pending; his conviction and sentence were final when the Fourth Circuit Court of Appeals dismissed his appeal in August 2006.

(iv) Rule 34 (a)

Guarascio's Rule 34(a) motion to arrest judgment is untimely. Pursuant to Rule 34(b), "[t]he defendant must move to arrest judgment within 14 days after the court accepts a verdict or finding of guilty or after a plea of guilty or nolo contendre." The court accepted the jury's guilty verdict on January 20, 2005.

C. **Conclusion**

For the foregoing reasons, the court concludes that even if a petition for writ of *audita querela* were an available vehicle for the post-conviction collateral relief he seeks, Guarascio has not presented substantive arguments that are consistent with well-established law. Accordingly, his "Petition for Writ of *Audita Querela*, § 1651; Motion to Dismiss Indictment for Lack of Subject Matter Jurisdiction and Failure to Charge an Offense; F.R. Cr. P. 12(b)(2); Alternatively, Motion to Arrest Judgment, Fed. R. Cr. P. 34(a)" [DE-180], is DENIED and this matter is DISMISSED.

SO ORDERED.

This, the 24th day of May, 2012.

JAMES C. FOX
Senior United States District Judge

9

Case 5:04-cr-00045-F   Document 182   Filed 05/24/12   Page 9 of 9